USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/20/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RASHEEN SMITH,

                    Plaintiff,

          -against-

CITY OF NEW YORK, POLICE OFFICER
DANIEL ALEXIS, Shield No. 161, POLICE
OFFICER FERNANDO AVALOS, Shield No.
19429, and POLICE OFFICERS JOHN DOES
1–5,

                    Defendants.

---

1:18-cv-05079-MKV

<u>MEMORANDUM
OPINION AND ORDER</u>

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiff Rasheen Smith brings this action under 42 U.S.C. § 1983 and New York state law against Defendants the City of New York and Police Officers Daniel Alexis and Fernando Avalos (collectively, "Defendants"), alleging excessive force, false arrest, malicious prosecution, failure to intervene, and *respondeat superior* liability. Defendants have moved for summary judgment (Defs.' Mot. [ECF No. 54]), and Plaintiff has moved for partial summary judgment (Pl.'s Mot. [ECF No. 60]). For the reasons discussed below, Defendants' motion is GRANTED, Plaintiff's motion is DENIED, and Plaintiff's Complaint is DISMISSED.

# BACKGROUND

## A. Factual Background[1]

On January 15, 2017, Officers Alexis and Avalos were assigned to the 46th Precinct on Ryer Avenue, a one-way street, in the Bronx, New York.  (Defs.' 56.1 Response ¶¶ 1–4, 8–9; Pl.'s 56.1 Response ¶¶ 1–4, 7.)  At the time, Plaintiff resided across the street from the precinct.  (Defs.' 56.1 Response ¶ 5; Pl.'s 56.1 Response ¶¶ 5–6.)

Before starting their patrols, Officer Alexis and others, including non-party Sergeant Tell Beharry, congregated outside the precinct.  (Defs.' 56.1 Response ¶¶ 6–7; Pl.'s 56.1 Response ¶¶ 8–11.)  While standing in front of the precinct, Officer Alexis observed a man riding a motorized scooter.  (Defs.' 56.1 Response ¶ 10; Pl.'s 56.1 Response ¶ 14.)  The parties dispute who was operating the scooter.  Plaintiff testified that his neighbor, Pedro, was riding the scooter. (Ofodile Decl. Ex. C ("Smith Tr.") 56:20–56:25 [ECF No. 63-3].)  Officer Alexis testified that someone other than Plaintiff was riding the scooter on the sidewalk.  (Collins Decl. Ex. D ("Alexis Tr.") 27:12–28:10 [ECF No. 55-4].)  However, Sergeant Beharry testified that *Plaintiff* was the one

---

[1] The Court cites to the parties' 56.1 Counterstatements since they contain the parties' assertions and responses. (*See generally* Defs.' 56.1 Response [ECF No. 64]; Pl.'s 56.1 Response [ECF No. 71].)  Defendants ask the Court to strike and deem as admissions various responses in Plaintiffs' 56.1 Counterstatement that are argumentative, speculative, conjectural, do not specifically controvert the fact at issue, or do not provide a citation to the record. (Defs.' Reply 6–7 [ECF No. 76].)  Defendants are correct that many of Plaintiff's responses are improper under Local Civil Rule 56.1.  The Court, however, "does not blindly accept [the parties'] 56.1 Statement[s] at face value, as allegations are not deemed true simply by virtue of their assertion in the Local Rule 56.1 statement." *RP Family, Inc. v. Commonwealth Land Title Ins. Co.*, No. 10–CV–1149 (DLI)(CLP), 2014 WL 1330932, at *1 (E.D.N.Y. Apr. 1, 2014) (quoting *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650(AJN), 2014 WL 969661, at *2 (S.D.N.Y. Mar. 12, 2014)).  In considering the parties' motions, the Court has carefully reviewed the parties' 56.1 Statements and has independently assessed the underlying record to determine whether genuine issues of material factual exist and summary judgment is appropriate.  *See Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995))).  The Court deems admitted those factual assertions that are not specifically controverted with citations to admissible evidence.  *See* Local Civ. R. 56.1(c)–(d); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).  The Court also deems undisputed Defendants' assertions of fact in their 56.1 Statement that Plaintiff admits notwithstanding Defendants' denial of those same facts when asserted by Plaintiff in his 56.1 Statement.  (*Compare* Defs.' 56.1 Response ¶ 12, *with* Pl.'s 56.1 Response ¶ 18.)

riding the scooter on the sidewalk.  (Collins Decl. Ex. F ("Beharry Tr.") 34:20–35:10 [ECF No. 55-6].)

It is undisputed that, thereafter, "Plaintiff, on the opposite side of Ryer Avenue, spoke in a volume loud enough to get the attention of the officers."  (Pl.'s 56.1 Response ¶ 18; *see supra* note 1.)  Defendants claim that Plaintiff was screaming and cursing at them in a manner that caused pedestrians to react and gather.  (Defs.' 56.1 Response ¶ 12.)  Officer Alexis testified that Plaintiff shouted, "What the fuck you guys asking him about the helmet for[?]  Fuck you guys."  (Alexis Tr. 28:11–28:17; *id.* at 38:19–39:4.)  Officer Avalos testified that Plaintiff shouted, "Fuck all of you, fuck the police."  (Collins Decl. Ex. E ("Avalos Tr.") 62:11–63:20 [ECF No. 55-5].)  Plaintiff asserts that from the stairs of his building he saw the police "surrounding" and "cursing" at Pedro, who was on the scooter, and that he yelled at the officers, "that man don't speak no English." (Defs.' 56.1 Response ¶ 13; Smith Tr. 50:6–51:19.)  Plaintiff concedes, for purposes of summary judgment, that he shouted obscenities at the officers.  (Pl.'s Opp. 14 n.1 [ECF No. 70].)

Thereafter, Plaintiff began walking down the sidewalk toward a bodega on the corner. (Defs.' 56.1 Response ¶ 14; Pl.'s 56.1 Response ¶ 21.)  Plaintiff claims that he was "followed from the front of his building to the front of the bodega."  (Defs.' 56.1 Response ¶ 15; Pl.'s 56.1 Response ¶ 22.)  Defendants assert that Sergeant Beharry advised the officers that they were going to approach Plaintiff, who was in the vicinity of the bodega, to issue Plaintiff a summons for disorderly conduct and violations of New York Vehicle and Traffic Law.  (Defs.' 56.1 Response ¶ 15; Pl.'s 56.1 Response ¶¶ 22–23.)  It is undisputed that the officers approached Plaintiff in the vicinity of the bodega.  (Pl.'s 56.1 Response ¶ 24.)  Sergeant Beharry testified that the purpose of the stop was to issue a summons for the traffic violations.  (Beharry Tr. 41:25–42:12, 43:8–43:13.) Sergeant Beharry also testified that, "Mr. Smith not only committed the [traffic] infraction, but

when he yelled whatever derogatory comments he made at me, Mr. Smith also committed disorderly conduct because at the same time, when he said what he said, people stopped, they looked, and they gathered." (*Id.* at 49:7–49:17.)  Officer Alexis testified that Sergeant Beharry told them that they needed to go talk to Plaintiff, which Officer Alexis understood to mean "to write him a summons for being disorderly." (Alexis Tr. 46:8–46:12.)  Officer Avalos testified that Sergeant Beharry did not advise them of the reason for initiating the stop until after the encounter. (Avalos Tr. 69:2–70:2.)

Plaintiff recorded part of the encounter on his cell phone. (Pl.'s 56.1 Response ¶ 25; *see* Collins Decl. Ex. H.)  As the officers approached Plaintiff, Sergeant Beharry asked Plaintiff for three forms of identification. (Defs.' 56.1 Response ¶ 16; Pl.'s 56.1 Response ¶¶ 24, 26; Alexis Tr. 69:2–69:4; Avalos Tr. 73:6–73:10.)  Plaintiff did not provide any ID. (Pl.'s 56.1 Response ¶ 27.) Instead, Plaintiff, while sticking his phone in the officers' faces, responded in a loud, combative, and antagonistic manner:

> Yeah, I have ID.  I live right here.  Excuse me, don't harass me.  Do you have ID?  Do you have three forms of identification?  Do you have three forms of identification?  Do you have three forms of identification?  Don't touch me, sir.  Excuse me, do you—excuse me.  I live right here.  Don't touch me, sir.  Excuse me.

(Collins Decl. Ex. H 00:10–00:18.)[2]

Plaintiff then began to walk away from the officers. (Defs.' 56.1 Response ¶ 22; Pl.'s 56.1 Response ¶ 30.)  Sergeant Beharry attempted to stop Plaintiff from walking away by placing his arm toward Plaintiff's chest area. (Defs.' 56.1 Response ¶ 23; Pl.'s 56.1 Response ¶ 31.)  Plaintiff

---

[2] Plaintiff claims that he responded by stating that he had an ID, asking Sergeant Beharry the reason for the stop, and telling the officers that he would show his ID if they showed him theirs. (Defs.' 56.1 Response ¶¶ 18–19, 21.) Plaintiff's claim is at odds with his own video recording and therefore need not be credited. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) (rejecting nonmovant's account of police chase because it was "so utterly discredited by the [video recording] that no reasonable jury could have believed him").

responded by thrusting his arms in the air.  (Pl.'s 56.1 Response ¶ 32.)[3]  Officers Alexis and Avalos perceived Plaintiff's conduct as striking Sergeant Beharry in the chin.  (Pl.'s 56.1 Response ¶¶ 33–34; Alexis Tr. 76:15–77:3; Avalos Tr. 83:23–86:10.)[4]

Defendants claim Plaintiff resisted when the officers attempted to place handcuffs on him; the officers and Plaintiff fell to the ground; the struggle continued on the ground until Plaintiff was handcuffed; and during the struggle Plaintiff bit Officer Avalos's left pinky.  (Defs.' 56.1 Response ¶¶ 25–28; Pl.'s 56.1 Response ¶¶ 35, 37–43).  Plaintiff claims, *inter alia*, he was "pulled from behind and from all directions," "forcefully brought to the ground," and "choked, punched, struck and kicked while on the ground."  (Defs.' 56.1 Response ¶¶ 25–28; Pl.'s 56.1 Response ¶¶ 35, 37–43.)  Plaintiff denies "biting" Officer Avalos but claims that Officer Avalos's finger entered his mouth when Officer Avalos attempted to brace his own fall.  (Defs.' 56.1 Response ¶¶ 27–28; Pl.'s 56.1 Response ¶¶ 40–42.)

Plaintiff was charged in a criminal complaint with assault in the third degree pursuant to N.Y. Penal Law § 120.00(1), resisting arrest pursuant to N.Y. Penal Law § 205.30, harassment in the second degree pursuant to N.Y. Penal Law § 240.26(1), and disorderly conduct pursuant to N.Y. Penal Law § 240.20(1).  (Defs.' 56.1 Response ¶ 30; Pl.'s 56.1 Response ¶ 47.)  Plaintiff was incarcerated at Rikers Island for approximately one week.  (Defs.' 56.1 Response ¶ 36; Pl.'s 56.1

---

[3] Plaintiff denies thrusting his arms in the air but provides no citation to evidence in the record that specifically controverts Defendants' assertion. (Pl.'s 56.1 Response ¶ 32.) Therefore, the Court deems Defendants' assertion admitted. (*See supra* note 1.)

[4] Plaintiff's counter-assertion that Officer Alexis "was not in a position to state what happened as he went back to the Precinct and it was only Avalos and Beharry that initially approached plaintiff" (Pl.'s 56.1 Response ¶ 33) is directly refuted by the portion of Officer Alexis's deposition transcript cited by Plaintiff, as Officer Alexis testified that he was present "right when [the officers] got to [Plaintiff]" when "[S]ergeant [Beharry] asked him for his ID" (Alexis Tr. 48:6–49:5). Similarly, Plaintiff's counter-assertion that Officer Avalos testified that Plaintiff "turned around to leave and in the process of turning around to leave, his elbows never made contact with Sgt. Beharry" (Pl.'s 56.1 Response ¶ 34) is directly refuted by the portion of Officer Avalos's deposition transcript cited by Plaintiff (*see* Avalos Tr. 85:25–86:3 ("Q. Was [Plaintiff] walking away, when he was attempting to make this elbow strike? A. No.")). These assertions by Plaintiff in his Rule 56.1 counterstatement are not supported by record evidence and are rebutted by Defendants' evidence. Accordingly, the Court deems Defendants' assertions admitted. *See supra* note 1.

Response ¶ 49.)   The charges against Plaintiff were dismissed three months later.   (Defs.' 56.1

Response ¶ 37; Pl.'s 56.1 Response ¶ 50.)

**B.  Procedural Background**

Plaintiff commenced this action in June 2018.   (Compl. [ECF No. 1].)   The Complaint

alleges the following causes of action: (1) malicious prosecution under Section 1983 against

Officers Alexis and Avalos; (2) malicious prosecution under New York law against Officers Alexis

and Avalos; (3) malicious prosecution under New York law against the City; (4) excessive force

under Section 1983 against Officers Alexis and Avalos; (5) false arrest under Section 1983 against

Officers Alexis and Avalos; (6) failure to intervene under Section 1983 against Officers Alexis and

Avalos; (7) false arrest, malicious prosecution, and excessive force against the City under a theory

of *respondeat superior*.   (Compl. ¶¶ 33–50.)

In October 2020, the parties filed cross-motions for summary judgment.   (Defs.' Mot. [ECF

No. 54]; Pl.'s Mot. [ECF No. 60].)   In support of their motion, Defendants filed the Declaration of

Nicholas L. Collins, counsel to Defendants, with several exhibits (Collins Decl. [ECF No. 55]), a

Local Rule 56.1 Statement (Defs.' 56.1 [ECF No. 56]), and a memorandum of law (Defs.' Br. [ECF

No. 57]).   In support of his motion, Plaintiff filed the Declaration of Anthony Ofodile, counsel to

Plaintiff, with several exhibits (Ofodile Decl. [ECF No. 63]), a Local Rule 56.1 Statement (Pl.'s

56.1 [ECF No. 62]), and a memorandum of law (Pl.'s Br. [ECF No. 61]).   In opposition to

Plaintiff's motion, Defendants filed a Local Rule 56.1 Counterstatement (Defs.' 56.1 Response

[ECF No. 64]) and a memorandum of law (Defs.' Opp. [ECF No. 65]).   In opposition to

Defendants' motion, Plaintiff filed a Local Rule 56.1 Counterstatement (Pl.'s 56.1 Response [ECF

No. 71]) and a memorandum of law (Pl.'s Opp. [ECF No. 70]).   Both sides filed replies.   (Defs.'

Reply [ECF No. 76]; Pl.'s Reply [ECF No. 77].)

## LEGAL STANDARD

"Summary judgment is appropriate only when, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may satisfy this burden "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249). The opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on mere speculation or conjecture.'" *PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 275 (2d Cir. 2019) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *Fletcher v. Atex,*

*Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (noting that the opposing party "must offer some hard evidence showing that its version of the events is not wholly fanciful").

"In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018). The same standard applies where, as here, both parties move for summary judgment: "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## **DISCUSSION**

To prevail on a claim under Section 1983, a plaintiff must establish "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). There is no dispute in this case that Defendants acted under color of state law.

### A. **Unlawful Stop or Detention**

In his opening brief, Plaintiff argues that he "is entitled to summary judgment on his section 1983 claim that the stop was not supported by a reasonable suspicion." (Pl.'s Br. 3–4.) But Plaintiff does not assert a cause of action for an unlawful stop or seizure under Section 1983 in his

Complaint.  (*See generally* Compl. ¶¶ 33–50.)  It is well-established that "a plaintiff may not use a memorandum of law or similar paper to assert a claim that is not contained in the complaint." *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007) (collecting cases).  "At this summary judgment stage, following the close of discovery, Plaintiff's attempt to inject this [unlawful stop] claim into this case comes too late."  *Scott v. Goord*, No. 01Civ.0847(LTS)(AJP), 2004 WL 2403853, at *14 (S.D.N.Y. Oct. 27, 2004).  Accordingly, Plaintiff's motion for summary judgment is denied with respect to Plaintiff's purported Section 1983 unlawful stop claim.

### B.  Excessive Force

Defendants have moved for summary judgment on Plaintiff's excessive force claim. Defendants argue that summary judgment is proper because there is no objective evidence supporting Plaintiff's excessive force claim beyond his own testimony, Plaintiff's claim is directly contradicted by medical records, and any force used was fully justified and reasonable under the circumstances.  (Defs.' Br. 6–10.)

The Fourth Amendment protects people from the use of excessive force by police during an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The test for excessive force during an arrest "is one of 'objective reasonableness.'" *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (collecting cases). "[T]he reasonableness question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (quoting *Graham*, 490 U.S. at 397).  "[A] *de minimis* use of force will rarely suffice to state a Constitutional claim."  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)).

As the Supreme Court has acknowledged, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).

"Although credibility determinations are not appropriate at this stage of litigation, in excessive force cases, summary judgment is proper 'where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening.'" *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (alteration in original) (quoting *Henry v. Officer Pierce*, 1:11-cv-845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017)).  As the Second Circuit has explained, a district court does not err where there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and despite drawing all reasonable inferences in plaintiff's favor, "no reasonable person could believe [plaintiff's] testimony." *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (citation omitted).

Plaintiff alleges in the Complaint that "[h]e was slammed to the ground, was punched and kneed, [and] his legs were spread in painful and unnatural manner and while they were beating and choking him."  (Compl. ¶ 18.)  Plaintiff further alleges that he "sustained a gash on his knee which required medical treatment and bandaging, a deep abrasion on his face, his leg was swollen and he was unable to walk properly for weeks, was unable to work for months, and he also had bruises all over his body from the beating he received and was in serious physical pain for weeks." (*Id.* ¶ 19.)  In his deposition, Plaintiff testified that during the encounter with police, which lasted several minutes, he was "being hit, grabbed, pulling my legs"; that the officers "choked [him] for no reason" and "tr[ied] to cover [his] mouth"; that he could not breathe; and that he "was faced down" being punched and kicked.  (Smith Tr. 71:20–72:19, 74:18–75:7, 75:22–75:24.)  Plaintiff

testified that as a result of the incident, he sustained scrapes on his face and hands, a gash and bruising on his knee, welts on his arms, back problems, and nerve damage to his foot. (*Id.* at 85:12–86:7, 87:23–89:8.)

Plaintiff's medical records tell a different story. Immediately after his arrest and the alleged beating, Plaintiff twice declined medical attention—first at the 46th Precinct and then at Bronx Central Booking—because he did not believe that he had a medical emergency. (Pl.'s 56.1 Response ¶¶ 54–55.) Thereafter, Plaintiff had two medical examinations on the same day at Rikers Island. (*Id.* ¶¶ 57, 59.) First, he was seen for a routine, new-admission examination. The medical records provide that Plaintiff's physical appearance was "normal" and "unremarkable." (Collins Decl. Ex. N 12–13 [ECF No. 55-12].) Specifically, his back was "unremarkable" with "normal spine curvature"; his head was "atraumatic"; his nose had "no deviation"; and his extremities had "no visible deformities" and "full range of motion." (*Id.*) Second, Plaintiff was examined due to alleged general "abdominal pain 3/10." (*Id.* at 7.) Plaintiff denied "injury or trauma." (*Id.*) The medical records provide that Plaintiff's general appearance was "well-developed" with "no acute distress"; his back was "unremarkable"; and he had "normal range of motion in all joints." (*Id.* at 7–8.) At Rikers, Plaintiff was only diagnosed with generalized abdominal pain and a finger abrasion. (*Id.* at 8.)

The medical records directly and irrefutably contradict Plaintiff's account of his encounter with the police. None of his alleged injuries were documented by medical staff, and his condition was inconsistent with the vicious beating Plaintiff alleges, and Plaintiff himself denied injury or trauma. Plaintiff "submits that he has presented more than sufficient evidence to get to the jury on the issue of excessive [force]." (Pl.'s Opp. 7.) But the only evidence Plaintiff has presented is his own uncorroborated testimony that is directly and irrefutably contradicted by medical records.

(*See id.* at 5–7.)  Summary judgment is appropriate where, as here, medical records "bluntly [and] directly contradict the version of facts [the] plaintiff g[ives] in his complaint as well as in his deposition" and "the record is devoid of evidence of any kind supporting [plaintiff's] description of his injuries—other than his own claims."  *Davis v. Klein*, No. 11-CV-4868(ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013); *see also Jenkins v. Town of Greenburgh*, No. 13-cv-8845 (NSR), 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (granting summary judgment and dismissing excessive force claim where medical records made no mention of alleged injury and only evidence supporting plaintiff's claim was his own deposition testimony); *Henry v. Brown*, 406 F. Supp. 3d 211, 214–15 (E.D.N.Y. 2016) (granting summary judgment and dismissing excessive force claim where claims of injuries were supported by "nothing more than his own bare assertions" and contradicted by medical records); *Bove v. New York City*, No. 98 CIV. 8800(HB), 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (granting summary judgment for defendants on excessive force claim where plaintiff's "allegations [we]re completely contradicted by the hospital's records and, more importantly, are unsupported by any evidence other than the plaintiff's assertions").  Because Plaintiff's testimony is flatly "contradicted by medical documents, his word alone is not enough to create a *genuine* dispute of material fact."  *Rolkiewicz*, 442 F. Supp. 3d at 643 (citing *Campbell v. Hanson*, 17-cv-1024, 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019)).

Plaintiff argues that the extent of his injuries is not determinative of whether the force used was reasonable under the circumstances.  (Pl.'s Opp. 3.)  Plaintiff is correct that the extent of his injuries is not dispositive.  However, given the lack of evidence supporting his claims and the contradictions between his testimony and his medical records, no reasonable jury could credit Plaintiff's version of the facts.  *See Jeffreys*, 426 F.3d at 555; *see also LaPierre v. LaValley*, 847 F. App'x 47, 50 (2d Cir. 2021); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 469–70 (S.D.N.Y. 1998)

(Sotomayor, J.) (granting summary judgment for Defendants despite Plaintiff claiming a dispute of fact regarding the extent of his injuries in part because Plaintiff's characterizations are contradicted by the findings in his medical examination).  Plaintiff also claims that "the City took pictures of his injuries at Rikers Island but those pictures have not been produced" and argues, without citation, that "[t]he presumption is that they refused to produce them because their contents disproves [sic] their stated position."  (Pl.'s Opp. 7–8.)  However, the parties previously jointly represented that discovery was complete, and Plaintiff never raised any issues regarding alleged non-production of documents, photographs, or medical records.  (*See* Joint Letter [ECF No. 44].) Plaintiff's attempt to raise this issue now and to argue that a presumption arises in his favor in opposition to Defendants' motion is unavailing.

Otherwise, having had the full benefit of discovery, "Plaintiff offers no reasonable basis for disbelieving his medical records."  *Pico*, 994 F. Supp. at 470.  Therefore, on the record before it, the Court finds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's excessive force claim.  Accordingly, the Court grants Defendants' motion with respect to Plaintiff's excessive force claim.

### C.  False Arrest

The parties have cross-moved for summary judgment on Plaintiff's claim for false arrest. Defendants argue that there was probable cause to arrest Plaintiff for disorderly conduct, assault, and harassment, or at a minimum, arguable probable cause sufficient for qualified immunity. (Defs.' Br. 13–16, 18–20.)  Plaintiff argues that "[t]he reason for the stop . . . was for disorderly conduct" but there was no probable cause for an arrest.  (Pl.'s Br. 6–8.)

In analyzing a claim for false arrest under Section 1983, courts look to the law of the state in which the arrest occurred.  *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006) (quoting *Davis*

*v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  To prevail on a claim for false arrest under New York law, the plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).  An arresting officer may avoid liability for a claim of false arrest by demonstrating that either he had probable cause for the arrest or he is protected from liability because he has qualified immunity.  *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Probable cause "is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)).  "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (ellipses and alteration omitted) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).  In determining whether an officer had probable cause, courts may consider only "those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).  A false arrest claim "turns on whether probable cause existed to arrest *for any crime*, not whether probable cause existed with respect to each individual charge." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004)).

14

At the summary judgment stage, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852 (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118–19 (2d Cir. 1995). "Even where factual disputes exist, . . . a § 1983 claim may fail if the plaintiff's version of events establishes probable cause to arrest." *Jackson ex rel. Jackson v. Suffolk County*, 87 F. Supp. 3d 386, 404 (E.D.N.Y. 2014) (quoting *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).

Even if the arrest was made without probable cause, an officer will be entitled to qualified immunity if he can establish that there was "arguable probable cause." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski*, 723 F.3d at 390). Put differently, an arresting officer is entitled to qualified immunity "unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). As the Supreme Court has explained, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (citing *Malley*, 475 U.S. at 344–45).

Here, the undisputed evidence, even when viewed in Plaintiff's favor, is sufficient to conclude that there was probable cause to arrest Plaintiff for disorderly conduct. Defendants

therefore are entitled to summary judgment on Plaintiff's false arrest claim.  *See Stansbury*, 721 F.3d at 89.

The New York disorderly conduct statute provides, in relevant part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
> 2. He makes unreasonable noise; or
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture . . . .

N.Y. Penal Law § 240.20(1)–(3).  Disorderly conduct has three elements: the defendant's conduct (1) "must match at least one of the descriptions set forth in the statute"; (2) "be 'public' in nature"; and (3) "be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof.'"  *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).

The disorderly conduct statute "was meant to proscribe disorderly behavior that is 'of public rather than individual dimension,' and it is limited to 'situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem.'"  *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir. 1996)) (alteration omitted) (quoting *People v. Munafo*, 50 N.Y.2d 326, 331, 428 N.Y.S.2d 924, 406 N.E.2d 780 (1980)).

Defendants had probable cause to arrest Plaintiff for disorderly conduct.  It is undisputed that Plaintiff shouted obscenities at the officers from across the street, including, *inter alia*, "fuck you guys" and "fuck the police."  (Alexis Tr. 28:11–28:17, 38:19–38:23, 40:25–41:7, 41:23–41:24, 45:14–45:15, 56:9–56:19, 58:16–58:21; Avalos Tr. 62:11–63:20.); (Pl.'s Opp. 14 n.1.)  It is also undisputed that Plaintiff's conduct occurred on a public sidewalk in broad daylight.  (Pl.'s 56.1 Response ¶ 18; *see* Collins Decl. Ex. H.)  Therefore, Plaintiff's conduct was "public" in nature and

fell squarely under Section 240.20(3),[5] which prohibits the "us[e] [of] abusive or obscene language" in a "public place." *See Hughes*, 2016 WL 5107030, at *8. Accordingly, the first two elements of disorderly conduct are met.

As to the *mens rea* element, to determine whether the record supports an inference that the requisite *mens rea* was present, courts apply a "contextual analysis," considering "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." *People v. Baker*, 20 N.Y.3d 354, 360, 984 N.E.2d 902, 960 N.Y.S.2d 704 (2013) (quoting *People v. Weaver*, 16 N.Y.3d 123, 128, 944 N.E.2d 634, 919 N.Y.S.2d 99 (2011)). Critically, "'a defendant may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance or alarm,' as long as the conduct 'recklessly creates a risk of such public disruption.'" *Hughes v. Lebron*, No. 14 Civ. 9479 (PAE), 2016 WL 5107030, at *8 (S.D.N.Y. Sept. 19, 2016) (quoting *Weaver*, 16 N.Y.3d a 128). As the Second Circuit has explained, "because the practical restraints on police in the field are greater with respect to ascertaining intent, the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." *Zalaski*, 723 F.3d at 393 (internal quotation marks and ellipsis omitted) (collecting cases).

Plaintiff's conduct and the surrounding circumstances made it objectively reasonable for the officers to have believed that Plaintiff, at the very least, recklessly created a risk of "public inconvenience, annoyance or alarm." N.Y. Penal Law § 240.20. It is undisputed that, in the middle of the day on a public sidewalk in New York City, Plaintiff was shouting and cursing loud enough that the officers could hear him from across the street. (Pl.'s 56.1 Response ¶ 18; *see* Collins Decl.

---

[5] Plaintiff's conduct was also loud enough to get the attention of the police officers who were across the street. (Pl.'s 56.1 Response ¶ 18.)

Ex. H.)   Plaintiff's cell-phone recording indisputably reflects that Plaintiff was being loud, combative, and antagonistic during his encounter with the officers.   *See Marcavage*, 689 F.3d at 110 (finding probable cause to arrest for disorderly conduct where audio recording showed that plaintiffs were "neither courteous nor compliant" but "hostile and noncompliant," effectively "court[ing] arrest").

The parties dispute the effect Plaintiff's conduct had on other people present during the incident.   Defendants present evidence that Plaintiff's conduct drew a crowd to the disturbance. (*See* Beharry Tr. 49:7–49:17 (testifying that "when [Plaintiff] said what he said, people stopped, they looked, and they gathered"); Alexis Tr. 60:22–61:15 (testifying that Plaintiff was "causing a scene" that had caused people to gather, stop, and look); *id.* at 66:2–66:6 ("People were stopping due to the fact of the manner he was displaying.   So talking, yelling; so, there was stopping around that.").   Plaintiff cites to testimony of Officer Avalos that no crowd gathered because of Plaintiff's conduct.   (Pl.'s Br. 7; *see* Avalos Tr. 80:18–82:2.)

The parties' dispute over whether a crowd gathered is not sufficiently material to preclude summary judgment.   Critically, Plaintiff admits that his neighbor, William, was present in front of his building and followed him to the vicinity of the bodega after "[Plaintiff] had called him when the Police starting coming [sic] in his direction."   (Pl.'s 56.1 Response ¶ 44.)   Plaintiff identifies William as being present in the video *before* the confrontation became physical.   (*See* Smith Tr. 70:19–70:24; *see* Collins Decl. Ex. H 00:19.)   Accepting Plaintiff's version of events as true, the fact that Plaintiff's use of obscenities attracted the attention of at least one neighbor made it objectively reasonable to believe that the conduct went beyond an "individual dimension" and that Plaintiff had the requisite intent for disorderly conduct.   *See Tobias v. County of Putnam*, 191 F. Supp. 2d 364, 374–75 (S.D.N.Y. 2002) (finding it reasonable for officers to believe that arrestee

had requisite intent for disorderly conduct where he used profanities in speaking with officers and made a spectacle that "attracted the attention at least one neighbor" (citing *People v. Santora*, 209 N.Y.S.2d 499, 500 (Westchester Cty. Ct. 1961))).

Despite drawing all reasonable inferences in Plaintiff's favor, the undisputed facts and Plaintiff's admissions establish that it was reasonable for the officers to believe that Plaintiff's conduct, at the very least, "recklessly creat[ed] a risk" of inconvenience, annoyance, and alarm. N.Y. Penal Law § 240.20; *see United States v. Nelson*, 500 F. App'x 90, 94 (2d Cir. 2012) (summary order) ("Nelson's combative tone and abusive language, coupled with the location of the incident [outside a public market], were 'sufficient to warrant a person of reasonable caution in the belief' that Nelson was recklessly creating the relevant risks." (quoting *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008))); *see also Uzoukwu v. Krawiecki*, No. 10-CV-4960 (RA), 2016 WL 6561300, at *5–6 (S.D.N.Y. Nov. 4, 2016) (holding there was sufficient grounds for a jury to find that Officers had probable cause to arrest Defendant for disorderly conduct where he was "screaming, yelling, [and] cursing," and "flailing his arms" in a public playground).

Even if there was no probable cause to arrest Plaintiff for disorderly conduct, there was at least arguable probable cause, which would entitle Officers Alexis and Avalos to qualified immunity on Plaintiff's false arrest claim. The Court therefore need not address in connection with Plaintiff's false arrest claim Defendants' arguments that there was probable cause or arguable probable cause to arrest Plaintiff for other offenses. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (noting that "probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest" (citing *Devenpeck*, 543 U.S. at 152–54)). Accordingly, the Court grants Defendants' motion and denies Plaintiff's motion on Plaintiff's false arrest claim. Defendants are entitled to summary judgment dismissing the false arrest claim.

### D. Malicious Prosecution

The parties also have cross-moved for summary judgment on Plaintiff's malicious prosecution claim. Defendants argue that there was probable cause to initiate the prosecution of Plaintiff. (Defs.' Br. 16–17.) Plaintiff argues that there was no basis for each of the offenses with which he was charged. (Pl.'s Br. 10.)

To prevail on a claim for malicious prosecution under Section 1983 and New York law, a plaintiff must establish four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "Because lack of probable cause is an element of a malicious prosecution claim, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Stansbury*, 721 F.3d at 94–95 (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010)); *see also Genia v. New York State Troopers*, No. 03–CV–0870, 2007 WL 869594, at *12 (E.D.N.Y. Mar. 20, 2007) (noting that "the existence of probable cause to prosecute entitles the defendant to summary judgment in his favor" (citing *Williams v. City of New York*, No. 02 Civ.3693(CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003))).

The probable cause determination relevant to a malicious prosecution claim differs slightly from that relevant to a false arrest claim. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000); *see Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999). "In the malicious prosecution context, probable cause is defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Diop v. City of New York*, 50 F. Supp.

3d 411, 421 (S.D.N.Y. 2014) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)).  Unlike

an arrest, prosecution requires probable cause for *each* of the crimes charged.  *See Posr v. Doherty*,

944 F.2d 91, 100 (2d Cir. 1991).  Moreover, probable cause to prosecute "is assessed in light of

the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at

the time of the arrest."  *Sankar v. City of New York*, 867 F. Supp. 2d 297, 311 (E.D.N.Y. 2012)

(quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)).  Therefore, "information

discovered by a malicious prosecution defendant after the arrest, but before the commencement of

proceedings, is relevant to the determination of probable cause in cases where the prosecution

follows a warrantless arrest."  *Jackson v. City of New York*, 939 F. Supp. 2d 235, 251 (E.D.N.Y.

2013) (quoting *Mejia*, 119 F. Supp. at 254).  A police officer is entitled to qualified immunity

on a malicious prosecution claim if there was arguable probable cause to support prosecution.  *See,

e.g.*, *Betts v. Shearman*, 751 F.3d 78, 82–83 (2d Cir. 2014); *Jean v. Montina*, 412 F. App'x 352,

354–55 (2d Cir. 2011) (summary order).

   The Court finds that there was probable cause for each of the charged offenses.  As such,

Plaintiff's malicious prosecution claims fail.  *See Stansbury*, 721 F.3d at 94–95.  As an initial

matter, the Court's finding of probable cause to arrest Plaintiff for disorderly conduct is a complete

defense to Plaintiff's claim because there is no new information learned by the police officers

between the arrest and swearing of the criminal complaint that would make the decision to charge

Plaintiff with disorderly conduct objectively unreasonable.  *See, e.g.*, *Kinzer v. Jackson*, 316 F.3d

139, 144 (2d Cir. 2003); *Harrison v. Cty. of Nassau*, 804 F. App'x 24, 28 (2d Cir. 2020); see also

*Jackson*, 87 F. Supp. 3d 386, 404 (granting qualified immunity on false arrest and malicious

prosecution claims based on same finding of arguable probable cause because no new evidence

surfaced between arrest and prosecution (collecting cases)).

To determine whether there was probable cause to prosecute the other three charges—resisting arrest, third-degree assault, and second-degree harassment—the Court must consider the elements of each offense.  First, "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person."  N.Y. Penal Law § 205.30.  "A key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause."  *People v. Jensen*, 86 N.Y.2d 248, 253, 654 N.E.2d 1237, 630 N.Y.S.2d 989 (1995) (collecting sources).  This statute, however, "does not totally prohibit any resistance at any time to a police officer, or prevent an individual from protecting himself or herself from an unjustified beating at the hands of the police."  *Lewis v. Brown*, No. 15 Civ. 5084 (NRB), 2017 WL 1091986, at *9 (S.D.N.Y. Mar. 15, 2017) (internal quotation marks and citation omitted).

Second, a person commits third degree assault when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or [h]e recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00(1)–(2).  Physical injury is defined to include "impairment of physical condition or substantial pain."  *Id.* § 10.00(9).

Third, a "person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . ."  *Id.* § 240.26(1).  "The crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened."  *People v. Bartkow*, 96 N.Y.2d 770, 772, 749 N.E.2d 158, 725 N.Y.S.2d 589 (2001).  The statute covers "petty forms of offensive touching" that do not rise to the level of assault.  *Id.*

Based on the undisputed facts known to Officers Alexis and Avalos at the time the prosecution was initiated, there was probable cause to prosecute Plaintiff for resisting arrest.  As

explained above, the officers had probable cause to arrest for disorderly conduct, and as such the arrest was authorized.  Defendants present evidence that when they attempted to make the arrest, Plaintiff, *inter alia*, "flail[ed]" and "tensed his arms and resisted to be placed in handcuffs." (Avalos Tr. 84:2–84:16; *see also id.* 84:23–84:25; Alexis Tr. 85:8–85:22.)  Plaintiff concedes that he "tensed up."  (Pl.'s Opp. 4.)  The only evidence Plaintiff presents to controvert Defendants' account of the struggle is his own testimony that he was viciously beaten, which, as discussed above, no reasonable jury could believe in light of the medical records and other evidence.  *See supra* Discussion, Section B.  Thus, it was objectively reasonable for the officers to believe that there was probable cause to prosecute for resisting arrest.  *See Cabisca v. City of Rochester*, No. 14-CV-6485-JWF, 2019 WL 5691897, at *17 (W.D.N.Y. Nov. 4, 2019) (finding malicious prosecution claim foreclosed by probable cause of resisting arrest where plaintiff "pulled away" from officer and officer interpreted plaintiff's actions as resisting arrest); *Tobias*, 191 F. Supp. 2d at 375–76 (finding probable cause to arrest for assault and resisting arrest where plaintiff "fought against the officer defendants as they tried to arrest and restrain him").

There was also probable cause to charge Plaintiff with third-degree assault.  Although Plaintiff denies that he bit Officer Avalos's pinky, he concedes that Officer Avalos's finger entered his mouth during the struggle.  (Pl.'s 56.1 Response ¶ 40.)  Further, it is undisputed that Officer Avalos suffered and received treatment at a hospital for "bruising, swelling, and loss of touch" to his finger.  (*Id.* ¶ 51.)  Officer Avalos swore in the complaint that he suffered "substantial pain to his left pinky finger."  (Collins Decl. Ex. L [ECF No. 55-10].)  And photographs of the officer's pinky reflect bruising and swelling, what an officer could reasonably consider to constitute physical impairment.  (*See* Collins Decl. Ex. O [ECF No. 15-13].)  Even when viewed in Plaintiff's favor, the record establishes that it was objectively reasonable to charge Plaintiff with third-degree

assault. *See People v. Sekoll*, 254 A.D.2d 797, 797, 679 N.Y.S.2d 225 (4th Dep't 1998) (rejecting argument that assault conviction was not supported by sufficient physical injury where officer "felt pain in his left arm as defendant pulled away from him" and sought hospital treatment (collecting cases)); *People v. Cotton*, 143 A.D.2d 680, 532 N.Y.S.2d 911 (2d Dep't 1988) (affirming second-degree assault conviction and resisting arrest where officer "sustained physical injury" when defendant attempted to evade arrest by struggling as officers attempted to handcuff him); *see also Mazurkiewicz v. N.Y.C. Transit Auth.*, 810 F. Supp. 563, 570 (S.D.N.Y. 1993) ("Since there was an altercation between the parties, the officers could not have been acting maliciously in charging plaintiff with assault, given the police officers' defense of qualified immunity.").

Similarly, there was probable cause to charge Plaintiff with second-degree harassment. It is undisputed that Plaintiff blurted obscenities from across the street and acted combative and antagonistic when approached by the officers. Defendants assert that Plaintiff thrusted his arms in the air and that Officers Alexis and Avalos perceived this action as striking Sergeant Beharry. (Pl.'s 56.1 Response ¶¶ 33–34; Alexis Tr. 76:15–77:3; Avalos Tr. 83:23–86:10.) Plaintiff counters that Sergeant Beharry and Officer Avalos testified that Plaintiff never made contact with Sergeant Beharry's chin. (Pl.'s 56.1 Response ¶ 33.) But the portion of the deposition transcripts of Sergeant Beharry and Officer Avalos cited by Plaintiff do not support Plaintiff's assertion. In fact, Sergeant Beharry testified that Plaintiff "shoved" him at his torso. (Beharry Tr. 68:23–72:6.) Defendants' assertion, therefore, is deemed admitted. *See supra* note 1. Regardless of whether Plaintiff made contact with Sergeant Beharry's chin, it was not unreasonable for Officers Alexis and Avalos to have believed, based on their observations and knowledge at the time the charges were filed, that Plaintiff *attempted* to strike Sergeant Beharry, which satisfies requirements for a second-degree harassment charge. N.Y. Penal Law § 240.26(1); *Bartkow*, 96 N.Y.2d at 772; *see*

*People v. Clarke*, 34 Misc.3d 159(A), 950 N.Y.S.2d 724, 2012 WL 762570, at *1 (2d Dep't 2012) (affirming conviction of second-degree harassment where "defendant attempted to punch the officer in the face and resisted being placed in handcuffs"); *see also People v. Fox*, 124 A.D.3d 1252, 1252, 999 N.Y.S.2d 293 (4th Dep't 2015) (finding probable cause for second-degree harassment where defendant pushed officer frisking him); *People v. Wallgren*, 94 A.D.3d 1339, 1343, 943 N.Y.S.2d 639 (3d Dep't 2012) (reversing dismissal of second-degree harassment where "defendant aggressively said, 'Don't tell me what to do,' and when the officer responded, defendant swung and struck him in the shoulder"); *People v. Lawrence*, 59 Misc. 3d 215, 70 N.Y.S.3d 798 (N.Y. City Crim. Ct. 2018) (finding allegations sufficient for harassment where defendant placed himself between officer and intended recipient of summons, began recording the officer on his cell phone, refused to produce identification when requested, and slapped officer's hand down).   Furthermore, it was not objectively unreasonable to believe that, based on the circumstances, Plaintiff's physical contact with Officer Avalos's pinky—regardless of whether Plaintiff affirmatively bit the officer—constituted harassment. *See Williams v. City of New York*, No. 14-CV-2191 (ARR), 2016 WL 9022589, at *5 (E.D.N.Y. Mar. 24, 2016) (finding that accusations of plaintiff, *inter alia*, biting person's finger, which "had caused 'pain,'" created "probable cause to arrest plaintiff for harassment, if not assault").

Based on these undisputed facts, there was probable cause to prosecute Plaintiff for the charged offenses. As such, his claims fail. *See Stansbury*, 721 F.3d at 94–95.   However, even if there was not probable cause, there was at least arguable probable cause, which would entitle the police officers to qualified immunity on Plaintiff's malicious prosecution claim. *See Mesa v. City of New York*, No. 09 Civ. 10464(JPO), 2013 WL 31002, at *11–12 (S.D.N.Y. Jan. 3, 2013) (granting qualified immunity where plaintiff made "forcible contact" with defendant police

officer's body, "inadvertent or not," and where plaintiff and defendant had an "altercation over [a] camera and [an] exchange of words" because "a reasonable officer could have believed that probable cause existed to arrest [plaintiff] for at least one of the misdemeanor offenses" of "harassment, resisting arrest, and disorderly conduct").  Accordingly, the Court grants Defendants' motion and denies Plaintiff's motion on Plaintiff's malicious prosecution claim.

### E.  Failure To Intervene

The parties have cross-moved on Plaintiff's claim for failure to intervene.  Plaintiff argues that Officer Avalos also "knew that plaintiff had not committed . . . disorderly conduct or resisting arrest."  (Pl.'s Br. 11.)  Defendants argue that the failure to intervene claim fails because they are entitled to summary judgment on the underlying constitutional violations.  (Defs.' Br. 17–18.)

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "[A] failure to intervene claim is contingent only on the underlying claim." *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept 30, 2016) (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012)).  Accordingly, "there can be no failure to intervene claim without a primary constitutional violation." *Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (quoting *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015)); *see Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009).  In the qualified-immunity context, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Ricciuti v.*

*N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiff's failure to intervene claim is grounded on his claims for excessive force, false arrest, and malicious prosecution.  (*See* Compl. ¶¶ 46–48.)  Plaintiff's failure to intervene claim fails as a matter of law because there was no underlying constitutional violation for excessive force and there was probable cause to arrest and prosecute Plaintiff.  *See Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary judgment) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim. (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988))); *see also Demosthene v. City of New York*, 14 Civ. 816 (SJ) (VMS), 2018 WL 10072931, at *5 (E.D.N.Y. July 20, 2018) (recommending dismissal of failure to intervene claim where defendants were entitled to qualified immunity on underlying claims based on arguable probable cause), *report & recommendation adopted*, 2019 WL 3992868 (E.D.N.Y. Aug. 16, 2019), *aff'd*, 831 F. App'x 530 (2d Cir. 2020); *Williams v. City of New York*, 14-CV-7158 (JPO), 2016 WL 3194369, at *6–7 (S.D.N.Y. June 7, 2016) (granting defendants summary judgment and finding that because "there was at least arguable probable cause to arrest [and prosecute] [plaintiff] . . . it cannot be said that Defendants' failure to intervene was 'objectively unreasonable'" (quoting *Ricciuti*, 124 F.3d at 129)); *Soto v. City of New York*, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (granting summary judgment for defendants on failure to intervene claim where underlying claims for false arrest and malicious prosecution failed).  Accordingly, the Court grants Defendants' motion and denies Plaintiff's motion on Plaintiff's failure to intervene claim.

**F.   *Respondeat Superior***

Plaintiff asserts a *respondeat superior* claim against the City based on Plaintiff's state-law claims.  (Compl. ¶¶ 49–50.)  Having granted summary judgment for Officers Alexis and Avalos on Plaintiff's state-law claims and there being no surviving underlying theory of liability, Plaintiff's *respondeat superior* cause of action fails.  *Stevens v. City of New York*, No. 10 Civ. 2172(KBF)(JLC), 2012 WL 5862659, at *4, n.6 (S.D.N.Y. Nov. 14, 2012) (finding "no substantive offense for which the City of New York can be held vicariously liable" upon dismissing state-law claims against individual police officers); *Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996); *see also Edwards by Edwards v. City of New York*, No. 15-Cv-3637 (SHS), 2019 WL 3456840, at *9 (S.D.N.Y. July 31, 2019) (dismissing *respondeat superior* claims against municipality where officer defendants were entitled to qualified immunity on underlying state-law claims).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED, Defendants' motion for summary judgment is GRANTED in its entirety, and Plaintiff's Complaint is DISMISSED.  The Clerk of Court is respectfully requested to terminate docket entries 54 and 60 and to close the case.


**SO ORDERED.**

**Date:  September 20, 2021**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**